No. 120,409

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KYLE T. BRUNGARDT,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

SYLLABUS BY THE COURT

1.

Whether a court has jurisdiction under the Kansas Judicial Review Act presents a question of law over which our review is unlimited.

2.

A petitioner seeking review of an administrative agency's decision under the Kansas Judicial Review Act must set forth his or her reasons for believing relief should be granted. When a petition gives notice to the court and the parties that the petitioner is challenging the validity of the "Officer's Certification and Notice of Suspension" form, the district court has jurisdiction to consider and resolve that question.

3.

The "Officer's Certification and Notice of Suspension"—commonly called the DC-27 form—memorializes that the officer provided the driver all required legal notices under K.S.A. 2019 Supp. 8-1001. In signing that form, an officer certifies the requirements of K.S.A. 2019 Supp. 8-1002(a) have been fulfilled. If these notice and certification requirements are not met, the Division of Motor Vehicles must dismiss the administrative proceeding and return any suspended license.

1

4.

K.S.A. 2019 Supp. 8-1002(b) indicates that an officer's certification of a DC-27 form "shall be complete upon signing, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be required." This language was enacted to avoid an argument that additional foundational requirements were necessary before the Division of Vehicles could suspend a licensee's driving privileges.

5.

"Signing" a document can encompass more than the physical act of manually writing a person's name. Instead, a signature is an indication by any distinctive mark—including a previously created image of an electronic signature—for the purpose of communicating and recording a person's authorization, certification, agreement, or identity. "Signing" is merely the act of affixing that signature.

Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Opinion filed June 12, 2020. Reversed and remanded.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*John M. Lindner*, of Lindner, Marquez & Koksal, of Garden City, for appellee.

Before HILL, P.J., GREEN and WARNER, JJ.

WARNER, J.: A person's signature may take many forms. Caselaw and statutes have recognized that a person may affix his or her signature by an "X" or other marking, by manually writing his or her name by hand, or even by having an amanuensis sign in a person's stead. Regardless of the form used, courts have emphasized that it is the person's intent in signing—to communicate and memorialize his or her authorization or agreement—that matters.

2

The case before us presents another wrinkle in this ever-evolving discussion. Kyle Brungardt's license was suspended for driving under the influence of alcohol when he failed a breath test. He challenged the suspension, claiming the notice-and-certification form the officer provided was invalid because it used an electronic, not handwritten, signature. When presented with this claim, the district court found the process used by the breath-test machine for creating and affixing the officer's electronic signature violated Kansas implied-consent statutes. In particular, the court found the officer *signed* the form when he initially created the image of his electronic signature, not when that signature was affixed to the challenged form. But "signing" is broader than the physical act of handwriting a person's name. Thus, we reverse the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Corporal Michael Kerley of the Garden City Police Department arrested Brungardt for driving under the influence of alcohol. The circumstances leading to his arrest are uncontested in this appeal and largely irrelevant to the issues we consider here.

After arresting Brungardt, Corporal Kerley administered a breath test, and Brungardt registered a blood-alcohol concentration well beyond the legal limit of .08. Corporal Kerley completed this breath test and the accompanying mandatory procedures using an Intoxilyzer 9000 machine. This machine allows officers to fill out required forms—including the "Officer's Certification and Notice of Suspension," commonly called a DC-27 form—electronically, instead of completing multiple paper forms once testing is complete.

The DC-27 form performs two primary functions. First, it memorializes that an officer provided the driver all the required advisories under K.S.A. 2019 Supp. 8-1001 before administering a breath test. Second, in signing that form after a driver fails a

3

breath test, an officer certifies that various legal requirements for requesting a test were present, that the driver failed the test, and that the officer followed mandatory testing protocols. At the hearing before the district court in this case, Corporal Kerley explained that the Intoxilyzer 9000 digitizes the entire testing process, from the test itself to certifying the required notice forms:

> "When it starts, we press the green button. It goes through its testing process. Its—does its—all its calibrations. After that it asks for the officer's information. I swipe my card. I verify my name, the business address, my operator ID number, and then I sign as well saying that I'm either the arresting officer or I'm just the [I]ntoxilyzer operator, or both. That signature is then used for every form subsequent from there.
>
> "After the suspect renders a breath sample and it's valid, then it will ask me, do I want to fill out any other forms, the DC-27, CDL-5, or DC-28. I can do all those forms, and it uses the same signature as the beginning, as I go through each form. So I don't have to sign multiple times. It just uses the same signature."

An officer filling out the DC-27 form on the Intoxilyzer 9000 must check boxes and initial each line on the form regarding the various legal certification requirements. But the electronic signature used on the form (and all other forms the officer fills out) is a copy of the same electronic-signature image the officer provided initially.

Brungardt's driver's license was administratively suspended by the Kansas Department of Revenue (the Department) because his blood-alcohol concentration exceeded the legal limit. He requested an administrative hearing, challenging the corporal's grounds to arrest him and administer the breath test. He also claimed the DC-27 form was invalid because it lacked an "original" signature—that is, he asserted Corporal Kerley's electronic signature on the form was ineffective. The hearing officer disagreed and affirmed the suspension. Brungardt then filed a petition for judicial review with the Finney County District Court, raising multiple arguments including his claim that the DC-27 form required an "original" (nonelectronic) signature.

The district court rejected Brungardt's arguments that Corporal Kerley lacked reasonable grounds to request the breath test and probable cause to arrest him. The court agreed with Brungardt, however, that the DC-27 form was invalid, albeit for slightly different reasons.

Though the court noted that Corporal Kerley's actions were faultless in all other respects, it found the form-filling process the Intoxilyzer 9000 employs—copying an image of the officer's previous electronic signature onto the applicable forms once the officer completes them—violated Kansas implied-consent laws. The court found that Corporal Kerley had physically *signed* the machine when he created his electronic signature, before the test was administered and before any forms were filled out. Because K.S.A. 2019 Supp. 8-1002(b) states "certification [of the DC-27 form] shall be complete upon signing," the court found the corporal had "certified to nothing more than a blank form." The court thus concluded the DC-27 form was invalid and the Department did not have authority to suspend Brungardt's license. The Department appeals.

DISCUSSION

1. *The district court had jurisdiction to determine the validity of the DC-27 form.*

The Department first argues the district court lacked subject-matter jurisdiction to hear the dispositive question in this case—whether the Intoxilyzer 9000's signature procedure resulted in an invalid DC-27 form—because Brungardt did not raise that specific issue in his petition for judicial review. Whether a court has jurisdiction under the Kansas Judicial Review Act (KJRA) is a question of law over which our review is unlimited. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

A petitioner seeking review of an administrative agency's decision under the KJRA must set forth his or her "reasons for believing that relief should be granted."

5

K.S.A. 77-614(b)(6). Here, Brungardt argued the invalidity of the DC-27 form at his administrative hearing and again in his petition for judicial review. While Brungardt's petition did not argue the invalidity resulted from certifying a blank DC-27 form (as the district court found), the Department's claim that the court "ruled on an entirely different issue" is overstated. Brungardt's petition gave notice to the court and the Department that he was challenging the validity of the DC-27 form. See *Rebel v. Kansas Dept. of Revenue*, 288 Kan. 419, 426, 204 P.3d 551 (2009). The district court had jurisdiction under the KJRA to consider and resolve that question.

2. *Corporal Kerley's electronic signature did not render the DC-27 form invalid.*

In signing the DC-27 form, an officer certifies the requirements of K.S.A. 2019 Supp. 8-1002(a) have been met. Because Brungardt failed the breath test, registering a blood-alcohol concentration above the legal limit, Corporal Kerley was required to certify

- he had reasonable grounds to believe Brungardt was operating a vehicle under the influence of alcohol or drugs (K.S.A. 2019 Supp. 8-1002[a][2][A]);

- Brungardt had been arrested (or was in custody or had been in an accident) (K.S.A. 2019 Supp. 8-1002[a][2][B]);

- he had provided the oral and written notices in K.S.A. 2019 Supp. 8-1001 (K.S.A. 2019 Supp. 8-1002[a][2][C]);

- Brungardt's breath test registered a blood-alcohol concentration of .08 or greater (K.S.A. 2019 Supp. 8-1002[a][2][D]); and

- the testing equipment, procedures, and operator met the Kansas Department of Health and Environment's certification requirements (K.S.A. 2019 Supp. 8-1002[a][3]).

6

K.S.A. 2019 Supp. 8-1002(f) directs the Division of Motor Vehicles to return any suspended license if these notice-and-certification requirements are not met.

K.S.A. 2019 Supp. 8-1002(b) indicates that this certification "*shall be complete upon signing*, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be required." (Emphasis added.) Previous Kansas implied-consent statutes required officers to report a test refusal under oath. See *Dewey v. Kansas Dept. of Revenue*, 11 Kan. App. 2d 72, 73-75, 713 P.2d 490 (1986). But in 1985, the legislature enacted the current language, which "requires only that the law enforcement officer's certification be signed." 11 Kan. App. 2d at 74. This court has explained that these revisions were enacted "to avoid an argument that additional foundational requirements were necessary before the Division of Vehicles could suspend a licensee's driving privileges." *Enslow v. Kansas Dept. of Revenue*, 26 Kan. App. 2d 953, 956, 996 P.2d 361 (2000). K.S.A. 2019 Supp. 8-1002 is a "remedial law" and "shall be liberally construed to promote public health, safety and welfare." K.S.A. 2019 Supp. 8-1001(u).

Corporal Kerley explained in his testimony that an officer performing a breath test using the Intoxilyzer 9000 creates an electronic signature at the beginning of the process (before administering the test) by physically signing on a screen that captures the image electronically. The machine then affixes this recorded electronic-signature image to the applicable forms as the officer fills them out. Corporal Kerley noted that the machine requires the certifying officer to check boxes and initial every line on the DC-27 form; the officer's signature is automatically affixed to the form when it is complete.

The district court found that because K.S.A. 2019 Supp. 8-1002(b) states that certification is "complete upon signing," Corporal Kerley's physical signature was the certifying act, not later affixing the electronic signature to the completed form. Based on this reading, the court found Corporal Kerley had certified the DC-27 form *before filling it out*, meaning he certified a blank document. We disagree.

The district court interpreted "signing" in K.S.A. 2019 Supp. 8-1002(b) as the physical act of writing one's name. But "signing" is much broader in scope. Indeed, practical experience teaches that people often "sign" documents in electronic form without manually writing anything. For example, attorneys sign pleadings filed electronically by typing "/s/ [Attorney's Name]." See Supreme Court Rule 1.12(a)(1) (2020 Kan. S. Ct. R. 12). Members of this court sign orders by affixing a digital image of a previously scanned signature. And Kansas law is replete with statutes recognizing electronic signatures as equivalents of physical, manual signatures. See, e.g., K.S.A. 2019 Supp. 8-2119(b) (electronic signature has the same effect as a manual signature in traffic citation); K.S.A. 2019 Supp. 16-1602(i) (defining "electronic signatures" under the Uniform Electronic Transactions Act); K.S.A. 58a-1102 (discussing electronic signatures under the Kansas Uniform Trust Code); K.S.A. 2019 Supp. 84-1-108 (discussing electronic signatures under the Uniform Commercial Code).

In fact, Kansas law acknowledges that in the absence of a mandated signature format, it is a person's *intent in affixing his or her signature*, not its form, that controls its effectiveness. As the Kansas Supreme Court explained more than a century ago in a case involving the writing requirement of the statute of frauds:

> "It is not necessary that the signature of a party to a memorandum, under the statute requiring a signing, should be at the bottom or end of the memorandum, but it may be at the top, in the middle, or inserted in any other part of the paper. But in all cases the name of the party to be charged must be affixed in such a manner as to authenticate the instrument. The signature may be by mark, initials, pencil, typewriting, print, or stamp, *if the party to be charged intended by the mark, initials, pencil, print, or stamp to affix the same as his signature*, with the purpose to complete or authenticate the contract as his own contract, and to indicate his intention to be bound thereby." (Emphasis added.) *Guthrie v. Anderson*, 49 Kan. 416, 419-20, 30 Pac. 459 (1892).

8

Thus, courts in this state have long recognized that "signing" a document encompasses more than the physical act of manually writing a person's name. Instead, a signature is an indication by any distinctive mark—including a previously created image of an electronic signature—for the purpose of communicating and recording his or her authorization, certification, agreement, or identity. "Signing" is merely the act of affixing that signature.

Here, the Intoxilyzer 9000 affixed Corporal Kerley's signature to and printed the DC-27 form after the corporal checked and initialed all required certification provisions. Although Corporal Kerley did not physically write his name on the DC-27 form, he effectively adopted and attested to the form—that is, he signed it—when his electronic signature was applied. The fact that Corporal Kerley's physical act of recording the image of his electronic signature occurred before he filled out the DC-27 form does not invalidate his certification.

The district court's interpretation of K.S.A. 2019 Supp. 8-1002(b) failed to account for technological advancement and overlooked the law's historical flexibility as to acceptable forms of signatures. Thus, the district court erred when it reversed the suspension of Brungardt's driver's license. We reverse that decision.

Brungardt did not cross-appeal the district court's other findings regarding Corporal Kerley's probable cause to arrest him or reasonable grounds to request a breath test. Those decisions remain in force. Because the record before us is unclear as to which, if any, of Brungardt's other claims in his petition for judicial review require further action, we remand the case to the district court.

Reversed and remanded.